**Xavier MOXLEY 98–B–3097, Petitioner,**

v.

**Floyd BENNETT, Superintendent of Elmira Correctional Facility, Respondent.**

**No. 97–CV–0890E(F).**

United States District Court, W.D. New York.

Aug. 27, 2003.

Xavier Moxley, Elmira Correctional Facility, Elmira, NY, Pro Se.

Howard R. Relin, District Attorney, Monroe County, Wendy Evans Lehman, Assistant District Attorney, of Counsel, Rochester, NY, for Respondent.

MEMORANDUM and ORDER [1]

ELFVIN, District Judge.

On November 17, 1997 Xavier Moxley petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The undersigned referred the matter to Magistrate Judge Leslie G. Foschio pursuant to 28 U.S.C. § 636(b)(1)(B) for consideration of the merits and legal issues raised by Moxley in his application for post-conviction relief. Judge Foschio filed his Report and Recommendation (the "R & R") on April 23, 2003, recommending that Moxley's petition be denied, that the case be dismissed and that a certificate of appealability be denied. Moxley filed his Objections to the R & R on May 5, 2003. For the reasons set forth below, this Court will overrule such objections and adopt the R & R. Accordingly, Moxley's request for habeas corpus relief will be denied and his petition will be dismissed.

■ Moxley alleges that, during jury selection, the prosecutor exercised a peremptory challenge on the basis of race to exclude a female African–American juror in violation of Moxley's Fourteenth Amendment rights. Moxley bases his habeas corpus petition on the ground that his *Batson* [2] motion was improperly denied.[3]

---

1. This decision may be cited in whole or in any part.

2. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

3. Of two African Americans that were prospective jurors, the prosecution exercised a peremptory challenge as to one. Beverly Patterson was not selected but Mr. Lampley was. The prosecution indicated that it did not want

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate" and may adopt those parts of the R & R to which no specific objection is raised, so long as such are not clearly erroneous. 28 U.S.C. § 636(b)(1)(C)(1993 & Supp.2003).[4] It is entirely within the province of this Court to adopt the portions of the R & R to which no specific objection has been raised.[5] Accordingly, inasmuch as this Court finds no clear error, this Court adopts those portions of the R & R to which Moxley did not object.

This Court must make a *de novo* determination with respect to those portions of the R & R to which specific objections have been made. 28 U.S.C. § 636(b)(1)(C).[6] The standard of review set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA") is:

"(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of that claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).[7]

Under this standard, this Court must—when dealing with "clearly established Federal law, as determined by the Supreme Court of the United States"—accord substantial deference to a state court determination that has adjudicated a federal constitutional claim "on the merits." *Ibid.*[8] This Court adopts the R & R's analysis and finding that the New York state courts adjudicated Moxley's *Batson* claim "on the merits." R & R, at 222–23.[9] Moreover, state court determinations involving factual issues are presumed to be correct and are only to be deemed unreasonable where petitioner rebuts such presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).[10] For the reasons

Patterson because she was unemployed, aged between thirty and forty, and did not exhibit anything in her background that demonstrated that she made important everyday decisions.

**4.** *See also Thomas v. Arn*, 474 U.S. 140, 149–150, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) (holding that section 636(b)(1)(C) does not require any review at all by the district court of an issue that is not objected to); *Allen v. Senkowski*, 2003 WL 169788, at *1 ("The district judge must make a *de novo* determination of those parts of the report to which timely written objection has been made by any party, but the uncontested portions of the magistrate judge's report may be adopted unless they show clear error.")(citing *Thomas* )(S.D.N.Y.2003).

**5.** *See Black v. Walker*, 2000 WL 461106, at *1 (W.D.N.Y.2000).

**6.** *Sieteski v. Kuhlmann*, 2000 WL 744112, at *1 (W.D.N.Y.2000) (citing *United States v. Raddatz*, 447 U.S. 667, 673–676, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980)).

**7.** *See also Morris v. Reynolds*, 264 F.3d 38, 45–46 (2d Cir.2001) (discussing the AEDPA standard of review), *cert. denied*, 536 U.S. 915, 122 S.Ct. 2381, 153 L.Ed.2d 199 (2002).

**8.** *See also Sellan v. Kuhlman*, 261 F.3d 303, 309–310 (2d Cir.2001).

**9.** Moxley's claim is based on clearly established federal law, *i.e., Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

**10.** *See also Overton v. Newton*, 295 F.3d 270, 275 (2d Cir.2002).

set forth below, the AEDPA standard has been satisfied here.

■ The R & R found that there was no *Batson* violation. First, Judge Foschio found that the trial judge's determination that there was no pattern of race discrimination—and that Moxley consequently failed to establish a *prima face* case under *Batson*—was neither contrary to clearly established law nor an unreasonable application of such law. R & R at 225–26. Second, Judge Foschio found that the trial judge's finding that the prosecutor's proffered reason[11] was race-neutral was not contrary to clearly established law nor an unreasonable application of such law. *Id.* at 227. Finally, Judge Foschio found that the presumption that the state court's factual finding that the proffered reason was not a pretext for purposeful discrimination was correct was not overcome by clear and convincing evidence. *Id.* at 227–29.

■ The Court now turns to Moxley's objections. First, Moxley objected to the R & R on the ground that it erred in concluding that Moxley failed to establish a *prima facie* case under *Batson.* Objs. to R & R, at 1 (objecting to R & R at 12:13–19). Moxley contends that his *prima facie* case was established by the fact that only two out of 150[12] prospective jurors were African–American and that the selection of one African–American juror does not preclude an inference of purposeful discrimination against the other. This Court finds that the trial judge's determination that Moxley failed to establish a *prima facie* case under *Batson* was neither contrary to clearly established law nor an unreasonable application of such law. It is difficult to rely on percentages where there were only two prospective African–American jurors. Nonetheless, half of the prospective African–American jurors were empaneled—thus undermining Moxley's *Batson* claim.[13] Moreover, there was no pattern of discrimination against African–Americans and no evidence that Patterson was struck based on her race. *Batson, supra* note 2, at 96–97, 106 S.Ct. 1712.[14] Accord-

11. The prosecutor's reason for striking Patterson was the "prospective juror's lack of significant employment experiences." R & R at 18; Tr. at 306–309. Such a basis is not inappropriate. *See United States v. Tucker,* 836 F.2d 334, 340 (7th Cir.1988) (holding that trial judge's determination—that the prosecutor's use of peremptory challenges to strike all four African–American venirepersons for lack of education and business experience was not pretextual—was not clearly erroneous).

12. Moxley failed to offer any evidence that the prosecutor was responsible for the fact that only two of 150 potential jurors were African–American.

13. *See Overton, supra* note 10 at 279 (finding that it could not say that the trial court "unreasonably applied" *Batson* where the trial court found no *prima facie* case where prosecutor struck seven of ten African–American jurors); *Windham v. Merkle,* 163 F.3d 1092, 1099 (9th Cir.1998) (affirming district court's finding that defendant failed to establish *prima facie* case under *Batson* because, *inter*

*alia,* three African American jurors were empaneled); *Jamison v. Duncan,* 2002 WL 31000000, at *2–5 (S.D.N.Y.2002) (finding no pattern of racial discrimination where prosecutor struck three out of six African–American jurors and noting that petitioner's *Batson* claim was "belied by the fact that [60%] of the African–American venirepersons from the second round emerged as jurors * * * "); *Owens v. Portuondo,* 1999 WL 378343, at *13 (S.D.N.Y.1999) (holding that defendant's *Batson* claim was strongly discounted by the fact that three African–American jurors were sworn in), *aff'd on other grounds,* 205 F.3d 1324 (2d Cir.2000); *Kelly v. Greiner,* 1999 WL 84077, at *4 (E.D.N.Y.1999) ("Strikes against three out of at least six African–Americans on the venire may not be sufficient to constitute a prima facie showing of race-based peremptory challenges.").

14. *See also supra* note 13. Moreover, it is noteworthy that *Batson* spoke in terms of jurors in the plural. *See Batson, supra* note 2, at 96–97, 106 S.Ct. 1712 (requiring the defen-

ingly, Moxley's first objection will be overruled.

Inasmuch as Moxley failed to establish a *prima facie* case under *Batson*—which is dispositive of his petition—, Moxley's remaining objections need not be addressed. This Court will nonetheless address several of Moxley's remaining objections. The Court, however, will not address those objections that amount to nothing more than a reiteration of his initial arguments. Indeed, having thoroughly considered all of such objections, the undersigned rejects them.

 Moxley also objected to the R & R on the ground that it erred in concluding that there was nothing in the prosecutor's remarks or questioning of the prospective jurors that "even remotely raise[d] an in-

ference of discriminatory motive" in striking Patterson. Objs. to R & R, at 2 (objecting to R & R at page 16, lines 15–19). Moxley contends that the fact that Patterson was a single mother indicated that she made significant daily decisions, which purportedly undermines the prosecutor's race-neutral justification. First, this objection is moot as noted above. Second, Moxley's counsel never raised this argument before the trial judge and it is thus waived.[15] Third, this argument is irrelevant. Even assuming that Patterson makes important daily decisions as a single mother, such, under the circumstances, does not undermine the trial judge's finding that employment experience is a race-neutral factor that the prosecutor was permitted to consider.[16] Accordingly, Moxley's objection is overruled.

dant to show "that the prosecutor has exercised peremptory challenges to remove from the venire *members* of defendant's race" and that the circumstances "raise an inference that the prosecutor used that practice to exclude the *veniremen* * * *") (emphasis added); *id.* at 97, 106 S.Ct. 1712 ("For example, a 'pattern' of strikes against black *jurors* included in the particular venire *might* give rise to an inference of discrimination.") (emphasis added). Consequently, the striking of a single juror hardly establishes a "pattern" of racially discriminatory peremptory challenges.

15. *People v. Smith*, 81 N.Y.2d 875, 876, 597 N.Y.S.2d 633, 613 N.E.2d 539 (1993) ("[D]efense counsel failed to set forth any facts or circumstances during the *Batson* colloquy from which the trial court could have inferred a purpose of discrimination. Defendant now argues for the first time that the prosecution's exclusion of the two jurors, who assertedly could have been expected to favor the prosecution based on their backgrounds, indicates a purpose of discrimination. This claim is not preserved."); *Galarza v. Keane*, 252 F.3d 630, 638 (2d Cir.2001) (noting that "a party must raise his or her *Batson* challenges in a manner that would allow a trial court to remedy the problem at trial"). Indeed, when making a *Batson* motion, the "defendant must object with sufficient specificity to inform the court of the particular grounds upon which

he relies, in order to provide the court and prosecutor an opportunity to address those grounds in a timely and effective manner." *Kelly, supra* note 13 at *4. Moreover, Moxley bears "the burden of articulating and developing the factual and legal grounds supporting his *Batson* challenge before the trial court." *Overton, supra* note 10 at 278–280. He failed to do so.

16. Moreover, under *Batson*, a prosecutor's "explanation need not rise to the level justifying exercise of a challenge for cause." *Batson, supra* note 2 at 97, 106 S.Ct. 1712. A prosecutor is only required to "articulate a neutral explanation related to the particular case to be tried." *Id.* at 98, 106 S.Ct. 1712; *id.* at 98 n. 20, 106 S.Ct. 1712 (noting that there are a number of bases upon which a "prosecutor reasonably may believe that it is desirable to strike a juror who is not excusable for cause"). The prosecutor here articulated a neutral explanation, regardless of whether or not Moxley agrees with the prosecutor's reasoning. *See Overton, supra* note 10 at 276 (noting that the "second step in the *Batson* inquiry does not mandate an explanation that is persuasive or even plausible"); *see also Purkett v. Elem*, 514 U.S. 765, 768–769, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (discussing the *Batson* inquiry). In any event, the trial judge found that the prosecutor's expla-

■ Moxley objects to the R & R's conclusion that the trial judge applied the analysis set forth in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), which was decided after Moxley's trial. The R & R did not so conclude. The R & R merely concluded that the trial judge's analysis comported with the subsequent analysis in *Williams.* Indeed, the Supreme Court analysis that was applied by the trial judge was the analysis set forth in *Batson.* Accordingly, Moxley's objection is overruled.

■ Moxley relies on *Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991), to contend that the issue of whether he established a *prima facie* case is mooted by the fact that the prosecutor offered a race-neutral justification.[17] *Hernandez* is distinguishable. however, because the trial judge did not rule on the issue of intentional discrimination before he addressed whether Moxley established a *prima facie* case. The prosecutor argued that Moxley failed to establish a *prima facie* case under *Batson.* He subsequently offered a race-neutral explanation "just for Appellate purposes." In other words, the prosecutor stated his race-neutral explanation for the record. Consequently, *Hernandez* is not controlling and Moxley's objection is overruled.

Accordingly, it is hereby **ORDERED** that Moxley's objections are overruled, that Judge Foschio's Report and Recommendation filed April 23, 2003 is adopted in its entirety, that Moxley's petition for a writ of habeas corpus is dismissed in its entirety and that this case shall be closed. There having been no substantial showing

---

nation was persuasive and Moxley has failed to proffer clear and convincing evidence to the contrary.

**17.** *Hernandez,* at 359, 111 S.Ct. 1859 ("[O]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges *and the*

by Moxley of the denial of a constitutional right, the Court declines to issue a certificate of appealability and certifies that any appeal would not be taken in good faith pursuant to 28 U.S.C. § 1915.

## REPORT and RECOMMENDATION

FOSCHIO, United States Magistrate Judge.

### JURISDICTION

Petitioner, Xavier Motley ("Motley"), acting *pro se,* initiated, on November 19, 1997, this action requesting habeas corpus relief under 28 U.S.C. § 2254. The matter was referred to the undersigned by the Honorable John T. Elfvin on April 7, 1999, Docket No. 10, for all proceedings necessary to reach a determination in this matter pursuant to 28 U.S.C. § 636(b)(1)(b).

### BACKGROUND

Moxley's sole claim for habeas relief is that during jury selection at his trial the prosecutor exercised a single peremptory challenge on the basis of race to exclude a female African–American juror in violation of his constitutional right to equal protection under the Fourteenth Amendment to the United States Constitution as established by the United States Supreme Court in *Batson v. Kentucky,* 476 U.S. 79, 84, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) ("*Batson* "). Docket No. 1. Respondent opposes, contending that the trial court's denial of Moxley's *Batson* objection was correct because Moxley did not establish a *prima facie* case of purposeful discrimination on the part of the prosecutor and that, in any event, the reason proffered by the

---

*trial court has ruled on the ultimate question of intentional discrimination,* the preliminary issue of whether the defendant had made a prima facie showing becomes moot") (emphasis added).

prosecutor for the challenge was race-neutral and Moxley could not ultimately prove that the proffered reason was pretextual as was his burden under *Batson.* Respondent's Memorandum of Law ("Respondent's Memorandum"), attached to Respondent's Answer, Docket No. 5, at 3.

## FACTS

On September 27, 1991, Moxley was indicted by a Monroe County, New York Grand Jury on one count of Murder in the Second Degree, in violation of N.Y. Penal Law, § 125.25(1) (Intentional Murder) and § 20.00 (aiding and abetting) (McKinney 1998)[1]; two counts of Murder in the Second Degree, in violation of N.Y. Penal Law § 125.25(3) (Felony Murder—Kidnapping and Robbery) and § 20.00; and one count of Attempted Murder in the Second Degree, in violation of N.Y. Penal Law, § 110.00 and § 20.00. The charges stem from an incident that occurred on August 18, 1991, when, allegedly, Moxley and three other individuals forcibly held a group of people, including children, in an apartment against their will while they were looking for another individual, Rob Gray. Tr. at 668–96, 747, 774, 816–24, 1196.[2] At the time, there was a dispute regarding Gray having taken some money that belonged to one of the four participants in the alleged crimes, Patrice Robinson. Tr. at 911, 1204, 1250–51. Mr. Gray and Mr. Robinson were partners in an illicit drug business. Tr. at 1250. One of the hostages, Tracey Tyson, Mr. Gray's girlfriend, was killed and another, Sean Gray, Rob Gray's brother, had his throat cut. Tr. at 680, 762–63. Following this murder and assault, Moxley purportedly provided statements to the police in which he admitted that he was involved in the scheme to find Rob Gray but that he had no part in the stabbings of Sean Gray and Ms. Tyson. Tr. at 911–917. These statements along with the identification of Moxley by one of the victims of the kidnapping, a ten year old boy, from a photo array were found to be admissible at trial by the trial court following a *Wade/Huntley*[3] hearing. WH. at 1–211[4]; Tr. at 695.

Moxley pleaded not guilty to the charges in the Indictment and a jury trial was conducted between October 25 and November 9, 1993 before New York State Supreme Court Justice John Doyle. At trial, the prosecution presented evidence that four men, including Moxley and Mr. Robinson, entered an apartment at 54 Dodge Street in the City of Rochester, armed with guns, looking for Rob Gray. Tr. at 668–96, 747, 774, 816–24, 1196. They first went to Mr. Gray's home but they did not see his truck there so they went to Ms. Tyson's apartment to look for him. Tr. at 1261. Tr. at 1250. Inside the apartment, the men found Ms. Tyson, her two children and her nephew. Tr. at 1203. Shortly thereafter an individual by the name of Eddy Stewart arrived at the

---

1. Unless indicated, all references to N.Y. Penal Law are to McKinney 1998.

2. References preceded by "Tr." are to pages of the transcript of the Petitioner's trial, submitted to the court by Respondent as part of Petitioner's state court records.

3. *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (due process clause precludes states from obtaining evidence through unduly suggestive identification procedures). *People v. Huntley,* 15

N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965) (trial court must conduct pretrial hearing to determine voluntariness of defendant's statements to be used as evidence at trial).

4. References preceded by "WH." are to pages of the transcript of the *Wade/Huntley* hearing held on February 3, 1992, which was provided to the court by Respondent's counsel as part of Petitioner's underling state court proceedings.

apartment after Rob Gray had asked him to go there and take Ms. Tyson and her baby to the hospital. Tr. at 749. Ms. Tyson had contacted Rob Gray and told him their baby was sick and needed to be taken to the hospital. Tr. at 749–52. Some time later Sean Gray also arrived at the apartment, Tr. at 668–67, 761, 1216, after Ms. Tyson had contacted him and told him she needed his assistance because her eight month old daughter, Sean Gray's niece, was sick and needed to go to the hospital. Tr. at 663–68. Ms. Tyson was forced by the intruders to telephone Rob Gray, and later Sean Gray, and tell them that her infant was ill and needed to be taken to the hospital in an attempt to lure them to the apartment. Tr. at 662–65, 668; 1215. Ms. Tyson, her children, her nephew, Sean Gray and Mr. Stewart were all held hostage in the apartment while the assailants continued to try to induce Rob Gray to come to the apartment. Tr. at 764, 1203, 1207–08, 1211, 1215, 1217–18. At some point, Sean Gray's throat was cut by one of the assailants after he repeatedly denied knowing where his brother or the drug money sought by the assailants was located, Tr. at 680, 761–63, and Ms. Tyson's throat was slashed, causing her death. Tr. at 916, 1135–36, 1142. Mr. Stewart was able to escape by crashing through a closed window. Tr. at 772–73.

At his trial, Moxley denied giving the statements he purportedly made to the police about his involvement in the scheme relating to tracking down Rob Gray and killing him because Gray had stolen money from Mr. Robinson, Tr. at 1264–66. Moxley testified that, while he was present at Ms. Tyson's apartment on the day of the homicide, Tr. at 1199–1202, 1211, he in no way participated in the crimes that occurred there and, at various times throughout the entire grisly affair, left the apartment because of what was occurring there, and had also attempted to talk to Robinson to convince him to leave. Tr. at 1181–1227.

On November 9, 1993, the jury found Moxley guilty of two counts of Felony Murder, *i.e.*, Murder in the Second Degree—Kidnapping and Robbery, and not guilty of Intentional Murder, Manslaughter in the First Degree and Attempted Murder in the Second Degree. Tr. at 1609–10. On December 7, 1993, Moxley was sentenced to 25 years to life on both counts of Felony Murder, to run concurrently. S. at 24.[5]

Following timely appeal to the Appellate Division, New York Supreme Court, Fourth Department, Moxley's convictions were unanimously affirmed, without opinion, on December 22, 1995. *People v. Moxley*, 636 N.Y.S.2d 536 (App.Div. 4th Dep't 1995). Among other issues, Moxley's appellate counsel raised on the direct appeal the *Batson* claim raised in this habeas Petition.[6] Moxley sought leave to appeal to the New York Court of Appeals, raising, *inter alia*, the *Batson* issue; however, leave was denied on August 16, 1996. *People v. Moxley*, 88 N.Y.2d 990, 649 N.Y.S.2d 397, 672 N.E.2d 623 (1996). Moxley's, *pro se*, request for reconsideration of that denial was denied on November 19, 1996. *People v. Moxley*, 89 N.Y.2d

---

5. References preceded by "S." are to pages of the transcript of the sentencing proceeding held be New York State Supreme Court Justice John Doyle on December 7, 1993, which was provided to the court by Respondent's counsel as part of Petitioner's underlying state court proceedings.

6. Copies of Moxley's appellate counsel's and Moxley's supplemental, *pro se*, briefs to the Appellate Division are attached as Appendix A to Respondent's Answer, Docket No. 5.

866, 653 N.Y.S.2d 289, 675 N.E.2d 1242 (1996).

## DISCUSSION

### I. Timeliness of Petition

On November 21, 1997, Judge Elfvin issued an order, Docket No. 3, directing the Respondent to file a memorandum of law addressing whether the Petition was timely under 28 U.S.C. § 2244(d)(1)(A), "particularly regarding whether the statute of limitations was tolled during the 90–day period in which Petitioner might have petitioned the United States Supreme Court for a writ of certiorari." There is no evidence in the Clerk's Office file or the docket sheet that a memorandum was ever filed by either party related to the statute of limitations issue nor was the statute of limitations raised as a defense in Respondent's answer or memorandum of law in opposition to the Petition. Docket No. 5. In any event, the Second Circuit has held that a defendant's conviction becomes final for purposes of 28 U.S.C. § 2244(d)(1)(A) when his time to seek direct review in the United States Supreme Court by writ of *certiorari* has expired. *Warren v. Garvin,* 219 F.3d 111, 112 (2d Cir.2000); *Smith v. McGinnis,* 208 F.3d 13, 15 & n. 1 (2d Cir.2000) (*per curiam*), cert denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 63 (2000); *Ross v. Artuz,* 150 F.3d 97, 98 (2d Cir.1998).

█ In this case Petitioner's request for leave to appeal to the New York State Court of Appeals was denied on August 16, 1996, *People v. Moxley,* 88 N.Y.2d 990, 649 N.Y.S.2d 397, 672 N.E.2d 623 (1996), and a request for reconsideration of that denial was denied on November 19, 1996. Adding 90 days to the August 16 date would mean that the one-year time period for filing the Petition began to run on November 14, 1996. The Clerk's Office Docket Sheet notes that the Petition was filed on November 17, 1997, outside the one-year time period and apparently untimely, but the file contains a cover letter from the Petitioner, dated October 27, 1997, which bears a Clerk's Office date-received stamp of November 10, 1997, which is within the one year period. The cover letter notes that the Petitioner was enclosing the original Petition, and two copies, and an affidavit of service, which is also part of the file, that avers that a true copy of the Petition was deposited for mailing to the New York State Attorney General's Office in an official depository of the United States Postal Service, said depository being in the exclusive control and possession of the New York State Department of Corrections, on October 23, 1997. As the Clerk's Office's date-received stamp on the cover letter forwarding the Petition for filing shows that the Petition was received by the Clerk's Office on November 10, 1997, a date which is within the one year period of limitations. The Petition was timely, regardless of whether or not the statute of limitations was further tolled during the time Petitioner's motion for reconsideration was pending in the New York Court of Appeals.

### II. Exhaustion/Procedural Bar

As noted, the single claim raised in the Petition is that the prosecutor exercised a peremptory challenge against an African–American woman on the basis of race and that such challenge violated his rights to equal protection under the Fourteenth Amendment to the United States Constitution as held in *Batson.* As the issue was presented to the state court, it has been exhausted as required by 28 U.S.C. § 2254(b)(1)(A). *Picard v. Connor,* 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Pesina v. Johnson,* 913 F.2d 53, 54 (2d Cir.1990). Based on the record, there is no procedural bar precluding federal

habeas review of the merits of this claim in this court. *See Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

### III. Standard of Review

Pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court must give substantial deference to a state court determination that has "adjudicated [the federal constitutional claim] *on the merits*". 28 U.S.C. § 2254(d) (emphasis added); *Sellan v. Kuhlman,* 261 F.3d 303, 309–10 (2d Cir. 2001) (emphasis added). Specifically, the AEDPA requires that where a state court has adjudicated the merits of a Petitioner's federal claim, habeas corpus relief may not be granted unless the state court's adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

 In *Williams v. Taylor,* 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court defined the phrases "contrary to" and "an unreasonable application" of clearly established federal law. A state court decision is "contrary to clearly established federal law", 28 U.S.C. § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams,* 529 U.S. at 413, 120 S.Ct. 1495. A state court decision involves "an unreasonable application," 28 U.S.C. § 2254(d)(1), of Supreme Court case law if it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case." *Id.* While both the AEDPA and its predecessor statute recognize that a presumption of correctness shall apply to state court findings of fact, *Whitaker v. Meachum,* 123 F.3d 714, 715 n. 1 (2d Cir.1997), the AEDPA also requires a Petitioner to rebut that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *LanFranco v. Murray,* 313 F.3d 112, 117 (2d Cir.2002). A presumption of correctness applies to findings by both state trial and appellate courts. *Galarza v. Keane,* 252 F.3d 630, 635 (2d Cir.2001); *Whitaker v. Meachum,* 123 F.3d 714, 715 n. 1 (2d Cir.1997).

 A federal habeas court must apply § 2254(d)'s standard where the state court has "adjudicated [the federal claim] on the merits." 28 U.S.C. § 2254(d). If, however, it cannot be determined whether or not the state court has adjudicated a Petitioner's federal constitutional claims on the merits, the federal constitutional claims are considered as not having been determined on the merits and, as such, the federal court applies the pre-AEDPA, *de novo,* review standard, even where the petition was filed after the effective date of the statute.[7] *See Sellan,* 261 F.3d at 314;

---

**7.** The AEDPA applies to petition's filed on or after the statute's April 24, 1996 effective date. *See, e.g., Williams v. Taylor,* 529 U.S. 362, 402, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (O'Connor, J, writing for the majority as to Point II); *Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Smith v. McGinnis,* 208 F.3d 13, 15 (2d Cir.) (*per curiam*), *cert. denied,* 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 63 (2000).

*Boyette v. Lefevre,* 246 F.3d 76, 89, 91 (2d Cir.2001).

 In *Sellan,* the Second Circuit held that a federal claim is adjudicated on the merits when the state court "(1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment." 261 F.3d at 312. In other words, in order to invoke the deferential standards of § 2254(d)(1), "the state court need only dispose of the Petitioner's federal claim on substantive grounds, and reduce that disposition to judgment. No further articulation of its rationale or elucidation of its reasoning process is required." *Aparicio v. Artuz,* 269 F.3d 78, 93–94 (2d Cir.2001) (citing *Sellan,* 261 F.3d at 312). If there is no indiction that the federal claim has been decided on procedural grounds, the federal claim will be deemed to have been adjudicated on the merits. *Brown v. Artuz,* 283 F.3d 492, 498 (2d Cir.2002).

 The court concludes that, in this case, the Appellate Division denied Moxley's *Batson* claim on the merits when it unanimously affirmed the convictions without opinion. *Moxley,* 636 N.Y.S.2d 536. Although, the Appellate Division's decision fails to state the reasons for its affirmance of Moxley's convictions, there is also no indication that the *Batson* claim raised on direct appeal was decided on procedural grounds. Such failure to state specific reasons for a state court adjudication on federal claims raised on appeal does not negate finding that the state court determination was on the merits for purposes of applying the AEDPA's deferential standards. *See, e.g., Brown,* 283 F.3d at 498 ("[b]ecause there is no basis either in the history of the case or the opinion of the Appellate Division for believing that [petitioner's] Sixth Amendment claim was denied on procedural or any other nonsubstantive grounds, we find that his claim was 'adjudicat[ed] on the merits' by the

state court, and therefore review his Sixth Amendment claim under the more deferential standard set forth in § 2254") (citing *Sellan,* 261 F.3d at 314). In *Sellan,* the court found that the Appellate Division's rejection of the Petitioner's ineffective assistance of appellate counsel claim on a *coram nobis* application with the statement "denied" constituted an adjudication on the merits for federal habeas purposes.

Moxley raised the *Batson* issue on direct appeal and it was properly before the Appellate Division. Moxley's appeal was timely filed, N.Y. Criminal Procedure Law, § 460.10(a) (McKinney 1994), and defense counsel timely raised the *Batson* challenge during jury selection. Tr. at 305–09. The record fails to reveal any basis to find Moxley's *Batson* claim was not decided on substantive grounds. *Brown,* 283 F.3d at 498; *Sellan,* 261 F.3d at 312. Accordingly, the court finds that Moxley's *Batson* claim was rejected on the merits by the Appellate Division and the claim is therefore subject to deferential review under the AEDPA. 28 U.S.C. § 2254(d).

## IV. The Merits of Moxley's Batson Claim.

Moxley contends that he was denied equal protection as established in *Batson,* when the prosecutor excused one African-American female juror and gave a purportedly race-neutral reason for the peremptory challenge which was pretextual. Petition, ¶ 12 A; Petitioner's Memorandum of Law ("Petitioner's Memorandum"), Docket No. 2 at 9–13. Specifically, Moxley asserts that as the prosecutor advanced a race-neutral reason for his strike of the African–American female juror prior to the time the trial judge ruled on the first prong of the three-prong *Batson* analysis, *i.e.,* whether the defendant established a *prima facie* case of exclusion of jurors based on race, *Batson,* 476 U.S. at 96, 106

S.Ct. 1712, the first prong was mooted, *Hernandez v. New York*, 500 U.S. 352, 359, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991), and, therefore, this court should only review and determine whether the trial court erred when it accepted the prosecutor's race neutral reason and denied Moxley's *Batson* motion. As discussed, *infra*, regardless of how evaluated, Moxley's *Batson* claim should be denied.

### A. The Prosecutor's Challenged Strike During Voir Dire.

Only one specific peremptory challenge made by the prosecutor is at issue in this habeas proceeding. During jury selection, the prosecutor struck, by exercise of an available peremptory challenge, a prospective African–American female juror and Moxley's counsel's made a motion under *Batson* objecting to such strike on the sole basis that "[he saw] no rational reason to take her off the jury." Tr. at 305. At the time of this peremptory challenge by the prosecutor, this prospective juror was the only African–American to have been struck; the only other African–American venire person at the time of the challenged strike had been seated as a juror. Tr. at 305, 307. At the time of the strike at issue, eight jurors had been sworn. Tr. at 309–10. In response to Moxley's objection to the disputed challenge, the prosecutor made two arguments. First, he contended that there had been no showing that there had been a pattern of strikes based on race. He noted that there had only been two African–American venire persons at the time of his strike against this prospective juror, and one of them had been seated. The prosecutor therefore asked the trial judge to find that there had been no pattern of discrimination during jury selection, *i.e.*, Moxley had not established a *prima facie* case under *Batson*. Tr. at 305–06. As a second argument, the prosecutor stated that "for [a]ppellate purposes"

he would place his reasons for striking the prospective juror on the record. He then stated that all the jurors who had been seated at that time

> "have been employed and have something in their background that indicate[s] that they make decisions in their everyday lives. That is one of the criteria I am looking for when I choose jurors, jurors who are used to—who make decisions in their lives, make decisions that have some importance. Obviously, we are asking them to make a very important decision here. This juror . . . indicates she is unemployed; there is nothing in the questioning that indicates that she has ever worked; she is single. There is nothing in her background at all that she related to us that indicates that she has any decision-making background whatsoever. For that reason, not just the fact that she is unemployed—although that obviously is a factor to take into account in the decision-making area—but the unemployed combined with the lack of any other indication that she has made this type of decision before caused me to use the challenge here."

Tr. at 306–07.

The trial judge then invited Moxley's counsel's to respond, and defense counsel responded that there had been only two African–American venire persons and that he

> "[didn't] think [that] if someone [was] unemployed is a good reason not to have them sit on the jury. It would be discriminatory to limit people who are just unemployed not to be able to sit on juries. I don't think that is a rational reason why [this juror] can't sit on this trial."

Tr. at 307. The prosecutor then responded that:

"I might agree, if one indicated in their background they were employed. If they had some position, employment, or family life, they made decisions, but just at the present time they weren't employed, that would be different. There is absolutely nothing in this juror's background that indicates she has ever been in a decision-making area of responsibility or position."

*Id.*

The trial judge then requested the prospective juror's age placed on the record, and he and the attorneys determined that she was between 30 and 40. Tr. at 307–08. The trial judge then denied the motion upon the following findings:

I don't see any pattern here by the prosecutor as to challenge African[-]Americans, and secondly, I think the reason [the prosecutor] enunciated is a rational reason—employment, ability to hold a job and hold employment is a factor that can be considered neutral, just as not being a high school graduate can be considered a neutral reason for a person to be excluded.

Tr. at 308. The prosecutor then stated that his notes reflected that this juror failed to complete portions of the prospective juror questionnaire as to her educational background. The trial judge noted that the juror had stated "diploma"; the prosecutor noted that the juror did not state high school or college, and did not indicate her specific birthplace. Therefore, the prosecutor contended the juror also had a problem providing complete answers to the reasonable questions posed. Tr. at 308–09. The trial judge then reiterated that Moxley's motion was denied. Tr. at 309.

### B. Batson Requirements.

In *Batson*, the Supreme Court held that a state's purposeful exclusion of jurors on the basis of their race violates equal protection and established a three part burden shifting analysis to apply when determining whether a prosecutor unlawfully used race as a basis for exercising peremptory challenges at a defendant's trial. *Batson*, 476 U.S. at 96–98, 106 S.Ct. 1712; *see, e.g., Overton v. Newton*, 295 F.3d 270, 276 (2d Cir.2002). First, the court must determine whether or not the defendant has made a *prima facie* showing that the circumstances give rise to an inference that the prosecutor struck the prospective juror because of his or her race. *Batson*, 476 U.S. at 97, 106 S.Ct. 1712. A *prima facie* case can be established "by, *inter alia*, showing a pattern challenges against minority prospective jurors." *Overton*, 295 F.3d at 276 (citing *Batson*, 476 U.S. at 97, 106 S.Ct. 1712). Second, once a *prima facie* case has been established "the burden shifts to the [prosecutor] to come forward with a neutral explanation" for challenging the potential juror. *Batson*, 476 U.S. at 97, 106 S.Ct. 1712. As noted, where the trial court has already ruled on the adequacy of the race-neutral basis of the challenge, the required *prima facie* showing becomes moot. *Hernandez, supra*, at 359, 111 S.Ct. 1859. The second part of the *Batson* test "does not mandate an explanation that is persuasive or even plausible." *Overton*, 295 F.3d at 276 (citing *Purkett v. Elem*, 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995)). Third, the "trial court then will have the duty to determine if the defendant has established purposeful discrimination." *Batson*, 476 U.S. at 98, 106 S.Ct. 1712.

It has been held that the first part of the *Batson* analysis "involves both issues of fact and issues of law," *United States v. Alvarado*, 891 F.2d 439, 443 (2d Cir.1989), *vacated on other grounds*, 497 U.S. 543, 110 S.Ct. 2995, 111 L.Ed.2d 439 (1990); *see also Overton*, 295 F.3d at 275; which, on federal habeas review, are considered

" 'mixed constitutional questions (*i.e.*, application of constitutional law to fact).' " *Overton,* 295 F.3d at 277 (quoting *Williams v. Taylor,* 529 U.S. 362, 400, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Under the AEDPA, such questions are subject to the standards set forth in 28 U.S.C. § 2254(d)(1), *i.e.,* whether the state court's determination was "contrary to, or involved an unreasonable application of, clearly established Federal law...." *Overton,* 295 F.3d at 277 (internal quotation marks and citation omitted). The second part of the analysis, which evaluates the race neutral reason proffered by the prosecution, involves a question of law and is also subject to the standards set forth in 28 U.S.C. § 2254(d)(1). *Baker v. Bennett,* 235 F.Supp.2d 298, 310–11 (S.D.N.Y.2002) (citing *Hernandez,* 500 U.S. at 359, 365, 111 S.Ct. 1859). The third question, *i.e.,* whether the prosecutor's proffered race-neutral reason was a pretext for a discriminatory reason, is a factual inquiry, *Hernandez,* 500 U.S. at 365, 111 S.Ct. 1859, subject to 28 U.S.C. § 2254(e)'s "presumption of correctness." *Baker,* 235 F.Supp.2d at 311 (quoting *Bryant v. Speckard,* 131 F.3d 1076, 1077 (2d Cir. 1997), *cert. denied,* 524 U.S. 907, 118 S.Ct. 2066, 141 L.Ed.2d 143 (1998)). With these principles in mind the court turns to the merits of Moxley's claims.

### C. Application of Batson Principles to Petitioner's Claim.

#### (1) Prima Facie Case

As noted, the initial inquiry is evaluated under 28 U.S.C. § 2254(d)(1)'s deferential standard, Discussion, *supra,* at 225, and, based upon that standard, the court concludes that the state court's determination was neither contrary to clearly established federal law (*Batson*) nor an unreasonable application of said law. Simply stated, there is nothing in the circumstances of the *voir dire* and the prosecutor's strikes that raise an inference of discrimination. *See Batson,* 476 U.S. at 96–97, 106 S.Ct. 1712. The prosecutor's strike of the African–American juror at issue was the first one made against an African–American juror and, significantly, the only other African–American juror who had appeared in the venire at that time had been seated. Tr. at 200, 305–06. Moreover, there is nothing in the prosecutor's remarks and questioning of prospective jurors, Tr. at 91–121, 159–185, 266–298, that even remotely raise an inference of discriminatory motive in the exercise of that one peremptory challenge against the African–American juror who was successfully challenged. *Batson,* 476 U.S. at 96–97, 106 S.Ct. 1712; *Overton,* 295 F.3d at 278. The only time race was raised prior to the time this juror was excused was when the prosecutor asked the prospective jurors if they could be fair and unbiased and not consider the race, gender and ages of the defendant and the victims. Tr. at 98–99. Such a generalized question during jury selection fails to establish, *prima facie,* any racial animus.

The court, therefore, finds that the state court's determination that there was no inference of discrimination presented on the record of Moxley's jury selection procedure was not "contrary to" clearly established federal law, nor "an unreasonable application" of clearly established federal law as those terms have been defined by the Supreme Court. *Williams,* 529 U.S. at 413, 120 S.Ct. 1495; Discussion, *supra,* at 221–22. The trial judge applied the Supreme Court's analysis in deciding Moxley's *Batson* motion, found that a *prima facie* case had not been established, and that the prosecutor's reason was rational and race neutral. Tr. at 308. Given this record, the Appellate Division's affirmance

cannot be found to have unreasonably applied or be inconsistent with *Batson.*

### (2) *The Prosecutor's Race–Neutral Reason*

While this court's finding that the state court's determination that Moxley failed to establish a *prima facie* case of a *Batson* violation at trial was neither contrary to nor an unreasonable application of *Batson* is determinative of the merits, should the District Judge disagree with this finding, the court considers alternatively, whether a race-neutral reason was stated as the trial judge made a determination that the prosecutor's reason was rational and race neutral. Moreover, Moxley has challenged the trial court's determination that the proffered reason was race-neutral and that it was not a pretext for discrimination. Petitioner's Memorandum at 9–12. However, this analysis as to the second prong of the *Batson* requirement is also made under § 2254(d)(1). Discussion, *supra,* at 225.

The trial judge correctly recognized the applicable legal rules to apply to the *Batson* challenge and determined that the prosecutor's proffered reason was rational and neutral. Tr. at 305–08. The court stated that "employment, ability to hold a job and employment is a factor that can be considered neutral, just as not being a high school graduate can be considered a neutral reason for a person to be excluded." Tr. at 308. Under *Batson,* the prosecutor may state any reason for the peremptory challenge, "as long as it [is] 'based on something other than' the juror's membership in the protected class." *Baker,* 235 F.Supp.2d at 310 (quoting *United States v. Berger,* 224 F.3d 107, 120 (2d Cir.2000) (quoting *Hernandez,* 500 U.S. at 360, 111 S.Ct. 1859)). Here, the prosecutor's reason was directed to the prospective juror's lack of significant employment experiences and as such it was based on a

motive other than race. Accordingly, it cannot be said here that the Appellate Division "unreasonably applied" *Batson* in affirming the trial judge's determination.

### (3) *The Determination that the Proffered Reason Was Not a Pretext for Discrimination*

Under *Batson,* once the trial court has determined that the prosecutor has offered a race-neutral reason, the court must determine whether the defendant has carried its burden of proving purposeful discrimination. *Purkett,* 514 U.S. at 767, 115 S.Ct. 1769 (citing *Hernandez,* at 358–59, 111 S.Ct. 1859). After providing defense counsel the opportunity to rebut the prosecutor's proffered reason, Tr. at 307, the trial judge determined, as discussed, that the prosecutor's reason was rational and neutral, and he denied the motion. Tr. at 308. As noted, the third step of the *Batson* analysis is a factual determination that is also subject to the AEDPA's presumption of correctness standard under 28 U.S.C. § 2254(e). Discussion, *supra,* at 225–26.

Initially, this court notes that the trial judge made an adequate record to support his determination on the *Batson* motion, particularly with respect to the question of purposeful discrimination. The Second Circuit has recognized that the third step of the *Batson* inquiry requires the trial judge to make " 'an ultimate determination on the issue of discriminatory intent based on all the facts and circumstances,' " *Jordan v. Lefevre,* 206 F.3d 196, 200 (2d Cir. 2000) (quoting *United States v. Alvarado,* 923 F.2d 253, 256 (2d Cir.1991)), and that this duty entails a determination of the credibility of the proffered reason. *Jordan,* 206 F.3d at 200 (citing *Barnes v. Anderson,* 202 F.3d 150 (2d Cir.1999)). The Second Circuit has also cautioned that a trial judge should not review a *Batson*

challenge with "undue haste and rul[e] in a summary fashion." *See United States v. Stavroulakis*, 952 F.2d 686, 696 (2d Cir.), *cert. denied*, 504 U.S. 926, 112 S.Ct. 1982, 118 L.Ed.2d 580 (1992). However, the Second Circuit has recently held that the degree of alacrity with which the state court disposes of a *Batson* challenge is not a constitutional requirement declared by the Supreme Court and thus relevant for purposes of habeas review. *McKinney v. Artuz*, 326 F.3d 87, 103–04 (2d Cir.2003). While the trial court's consideration of the third element of the *Batson* test was performed in fairly summary fashion, the court finds taken as a whole upon this record it was sufficient to meet the *Batson* requirement. For example, in *Jordan, supra*, the trial court denied the motion immediately following the prosecutor's articulation of the race-neutral reason without giving defense counsel the opportunity to prove that the reason was pretext for purposeful discrimination. Here, the trial court gave Moxley's defense counsel the opportunity to make his case of purposeful discrimination before finding that the proffered reason was rational and race-neutral. Tr. at 307–08. The trial judge specifically inquired of Moxley's counsel if he wished to respond to the prosecutor's proffered reason as is required under *Batson's* third step, which Moxley's counsel did. Tr. at 307. Moxley's trial counsel's argument was not persuasive; instead it was rhetorical and generalized. Tr. at 307. The court then inquired into the age of the juror before deciding that Moxley had not established a *prima facie* case and that the prosecutor's proffered reason was rational and race-neutral. Tr. at 308. Even after making this ruling, the trial judge permitted the prosecutor to place on the record an additional concern about the prospective juror, following which the trial judge again stated that Moxley's motion was "denied in all respects." Tr. at 308–09. This ruling, the court finds was a sufficient determination of whether the prosecutor's true reason for excusing the prospective juror was discriminatory. Additionally, a trial court's determination on this issue is generally accorded great deference because the determination may decisively turn on " 'the demeanor of the attorney who exercises the challenge,' the evaluation of which 'lies peculiarly within a trial judge's province.' " *Barbara v. Goord*, 2001 WL 1776159, at *5 (quoting *Hernandez*, 500 U.S. at 365, 111 S.Ct. 1859 (citations omitted)). *See also Galarza*, 252 F.3d at 635 ("[m]ore particularly, when reviewing a Batson challenge in the context of a habeas petition, a trial court's conclusion that a peremptory challenge was not exercised in a discriminatory manner is entitled to a presumption of correctness, except, *inter alia*, to the extent that the trial court did not resolve the factual issues involved in the challenge or if the finding is not fairly supported by the record") (citing 28 U.S.C. §§ 2254(d)(1) ("presumption of correctness not applicable if 'the merits of the factual dispute were not resolved in the State court hearing' ") and (d)(8) (1994) ("presumption of correctness not applicable if state court's 'factual determination is not fairly supported by the record' ")).

As noted, Moxley's trial counsel's argument that the prosecutor's proffered reason was not legitimate was largely conclusory. He simply argued that because someone is unemployed is not a good reason to keep them from serving on a jury and that it would be discriminatory to exclude from juries only those people who are unemployed. Tr. at 307. As noted, the trial court found the prosecutor's reason was race-neutral and denied the motion. In this case, the trial court's finding is presumed correct unless Moxley has provided the court with clear and convinc-

ing evidence to overcome the presumption, 28 U.S.C. § 2254(e)(1),[8] which Moxley has failed to do.

Moxley has cited to a number New York cases which have questioned the legitimacy of employment or lack thereof as a race-neutral basis for excluding a juror, *see, e.g., People v. Duncan,* 177 A.D.2d 187, 582 N.Y.S.2d 847 (App.Div. 4th Dep't) (a person's employment status may, in appropriate circumstances, constitute a non-pretextual reason for a peremptory challenge but the prosecutor's concern about the prospective juror's employment status should be related to the circumstances of the case), *lv. denied,* 79 N.Y.2d 1048, 584 N.Y.S.2d 1016, 596 N.E.2d 414 (1992). In this case, the prosecutor's reservations about the prospective juror's lack of any employment history related to his desire in selecting the juror's capacity to make important decisions based on everyday life experience. Tr. at 306–07. The prosecutor's questions in *voir dire* confirm such experience was the objective of the prosecutor's jury selection strategy. For example, the prosecutor repeatedly asked questions such as: "Do you realize the type of decision we are going to ask you to make regarding Mr. Moxley?," "[Does] everyone see what an important decision [this] is?", "You have to come back in here, stand up in court in front of Mr. Moxley and tell him, I find him guilty of murder in the 2nd Degree. Can you do that?," "You then understand how important that decision is?," "You see what an important decision it is?" Tr. at 92–95, 160–01, 332–33. Moreover, the same court that decided *Duncan, supra,* also considered the merits of Moxley's *Batson* claim, and rejected it. As such, the rationale for rejecting the

juror at issue was neutral and non-pretextual. Moxley has failed to come forward with "clear and convincing evidence" that the trial court's factual determination that the prosecutor's proffered reason was not race based and that the Appellate Division's affirmance of that determination were an incorrect application of *Batson* on to this record.

Accordingly, this court finds that (1) the state court's determination that Moxley did not establish a *prima facie* case of discrimination with respect to the prosecutor's challenge of an African–American juror was neither contrary to, nor an unreasonable application, of *Batson;* (2) the state court's determination that the prosecutor's proffered reason was race-neutral was not contrary to, nor an unreasonable application, of *Batson;* and (3) the presumption that the state court's factual finding that the proffered reason was not a pretext for purposeful discrimination was correct was not overcome by clear and convincing evidence.

## CONCLUSION

Based on the foregoing, the Petition should be **DISMISSED.** Further, as the court finds that there is no substantial question presented for appellate review, a certificate of appealability should not issue. 28 U.S.C. § 2253(c)(2).

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of

8. 28 U.S.C. § 2254(e)(1) provides that: "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Petitioner and the Respondent.

SO ORDERED.

Dated: April 23, 3003.